Wendy Park (Cal. Bar No. 237331)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: 510-844-7100 (Ext. 338)
Email: wpark@biologicaldiversity.org

Attorney for Plaintiffs Center for Biological Diversity and Sierra Club

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and SIERRA CLUB, <br><br> Plaintiffs, <br><br> v. <br><br> LEE M. ZELDIN, <br><br> in his official capacity as Administrator, United States Environmental Protection Agency, <br><br> Defendant. | Civil Action No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> (Clean Air Act, 42 U.S.C. §§ 7401 *et. seq.*) |

**INTRODUCTION**

1. This is a Clean Air Act "deadline" suit against Lee M. Zeldin, in his official capacity as Administrator of the United States Environmental Protection Agency (EPA), for his failure to protect people, ecosystems, and wildlife from dangerous exposure to sulfur oxides ($SO_x$) air pollution.

2. $SO_x$, which is formed primarily from the combustion of fuel with sulfur, such as coal and diesel, harms human health and the environment. Even short-term exposure to $SO_x$ has significant health impacts, including decrements in lung function, aggravation of asthma, and respiratory and cardiovascular morbidity. $SO_x$ also contributes to the formation of acid rain, which damages trees, crops, historic buildings, and monuments, and alters the acidity of both soils and water bodies.

3. The Clean Air Act requires EPA to establish health- and welfare-protective National Ambient Air Quality Standards (NAAQS) to limit the amount of $SO_x$ in the outdoor air. Areas with $SO_x$ pollution levels that exceed the standards must clean up their air.

4. To better protect the public from $SO_x$, the EPA promulgated a sulfur dioxide ($SO_2$) NAAQS in 2010. In response to the 2010 NAAQS, EPA designated the following areas as nonattainment, meaning that the air quality in these areas has $SO_2$ pollution that violates the standard: Sullivan County (part), Tennessee, Howard (part), Hutchinson (part), and Navarro (part) Counties, Texas, and Hayden, Arizona.

5. When a state submits a state implementation plan (SIP) to EPA which is supposed to reduce pollution levels to below the NAAQS, the Clean Air Act requires that EPA review it within specified time frames. Tennessee, Texas, and Arizona submitted SIPs to EPA for

nonattainment areas, but EPA has not met the deadlines to review the SIPs and determine whether they meet the requirements of the Clean Air Act.  *See* 42 U.S.C. § 7410(k)(2)-(4).

**JURISDICTION AND NOTICE**

6.    This case is a Clean Air Act "citizen suit."  Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a) (Clean Air Act citizen suits).

7.    This case does not concern federal taxes, is not a proceeding under 11 U.S.C. § 505 or 1146 of Title 11, and does not involve the Tariff Act of 1930.  Thus, this Court has jurisdiction to order declaratory relief under 28 U.S.C. § 2201.  If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

8.    Plaintiffs mailed to EPA by certified mail written notice of intent to sue regarding the violations alleged in this Complaint regarding Tennessee and Texas via a notice letter postmarked February 25, 2025.  EPA received it no later than March 3, 2025.  Plaintiffs mailed to EPA by certified mail written notice of intent to sue regarding the violations alleged in this Complaint regarding Arizona via a notice letter postmarked May 17, 2025.  EPA received it no later than May 27, 2025.  More than 60 days have passed since Plaintiffs mailed the notice letters.  EPA has not remedied the violations alleged in this Complaint.  Therefore, a present and actual controversy exists between the parties.

**VENUE**

9.    Venue is proper in this Court under 28 U.S.C. § 1391(e).  Plaintiff Sierra Club maintains its principal place of business in Oakland, California. Oakland, California is in the Northern

California judicial district.  This is a civil action in which the defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority.  No real property is involved in this action.  Defendant EPA resides and performs its official duties in this district.

10. Pursuant to Civil L.R. 3-2(c), (d), this case is properly assigned to the San Francisco or Oakland Division of this Court because a substantial part of the events and omissions giving rise to the claims in this case occurred in the County of San Francisco.

## PARTIES

11. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3) corporation incorporated and existing under the laws of the State of California, with its main California office in Oakland.  The Center for Biological Diversity has over 93,000 members throughout the United States and the world.  The Center for Biological Diversity's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through science, policy, and environmental law.  Based on the understanding that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked, the Center for Biological Diversity is working to secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us.

12. Plaintiff SIERRA CLUB is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in Oakland.  Sierra Club is the oldest and largest grassroots environmental organization in the United States, with approximately 614,000 members nationally.  Sierra Club's mission is to explore, enjoy, and protect the wild places of

the Earth; to practice and promote the responsible use of the Earth's resources and ecosystems; to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out these objectives.  Sierra Club performs this mission through advocacy, litigation, and educational outreach to its members and state chapters. Sierra Club and its members are greatly concerned about the effects of air pollution on human health and the environment and have a long history of involvement in activities related to air quality.

13. Plaintiffs' members live, work, recreate, travel, and engage in other activities throughout the areas at issue in this complaint and will continue to do so on a regular basis.  Pollution in the affected areas threatens and damages, and will continue to threaten and damage, the health and welfare of Plaintiffs' members, as well as their ability to engage in and enjoy their other activities.  Pollution diminishes Plaintiffs' members' ability to enjoy the aesthetic qualities and recreational opportunities of the affected areas.

14. The acts and omissions of EPA alleged here harm Plaintiffs' members by prolonging poor air quality conditions that adversely affect or threaten their health, and by nullifying or delaying measures and procedures mandated by the Act to protect their health from $SO_x$ pollution in places where they live, work, travel, and recreate.

15. The acts and omissions of EPA alleged here further harm Plaintiffs' members' welfare interest in using and enjoying the natural environment.  Elevated levels of $SO_x$ damage plant life, aquatic life, and natural ecosystems, thus harming Plaintiffs' members' recreational and aesthetic interests.

16. EPA's failure to timely perform the mandatory duties described herein also adversely affects Plaintiffs, as well as their members, by depriving them of procedural protection and opportunities, as well as information that they are entitled to under the Clean Air Act.

17. The above injuries will continue until the Court grants the relief requested herein. A court order requiring EPA to promptly undertake its mandatory duties would redress Plaintiffs' and Plaintiffs' members' injuries.

18. Defendant LEE M. ZELDIN is the Administrator of the EPA. Administrator Zeldin is charged with the duty to uphold the Clean Air Act and to take required regulatory actions according to the schedules established by the Act, including the mandatory duties at issue in this case.

19. Administrator Zeldin is sued in his official capacity.

### FACTUAL BACKGROUND: SULFUR DIOXIDE

20. Of the $SO_x$ gases, sulfur dioxide ($SO_2$) is the most common. *See* Sulfur Dioxide Pollution: Sulfur Dioxide Basics, EPA, https://www.epa.gov/so2-pollution/sulfur-dioxide-basics#effects (last visited June 5, 2025). The largest source of $SO_2$ is the combustion of fossil fuels containing sulfur by power plants and other industrial facilities. *Id.* $SO_2$ is also produced during certain industrial processes, such as extracting metal from ore and in some oil refining processes, and by ships and other vehicles and heavy equipment that burn fuel with a high sulfur content. *Id.*; Primary NAAQS for Sulfur Dioxide, 75 Fed. Reg. 35,520, 35,524 (June 22, 2010).

21. Human health can be dangerously impacted by $SO_x$ emissions in as little as five minutes. Primary NAAQS for Sulfur Dioxide, 75 Fed. Reg. at 35,525. $SO_x$ pollution contributes to respiratory problems by impacting lung function and aggravating asthma, particularly for

children and the elderly. *Id.* at 35,525-29. $SO_x$ emissions can also aggravate existing heart and lung diseases, and cause respiratory and cardiovascular morbidity. *Id.*

22. $SO_x$ emissions also impact the environment. Acute and chronic exposures to $SO_x$ lead to foliar injury, decreased photosynthesis, and decreased vegetation growth. Secondary NAAQS for Oxides of Nitrogen and Sulfur, 77 Fed. Reg. 20,218, 20,224 (Apr. 3, 2012). In addition, because $SO_x$ emissions may be transmitted long distances, they contribute to visibility impairment problems in many national parks and wilderness areas. *See* Sulfur Dioxide Pollution: Sulfur Dioxide Basics, EPA, https://www.epa.gov/so2-pollution/sulfur-dioxide-basics#effects (last visited June 5, 2025). Furthermore, $SO_x$ emissions have the potential to negatively affect endangered species. *See* Secondary NAAQS for Oxides of Nitrogen and Sulfur, 77 Fed. Reg. at 20,234. Finally, $SO_x$ emissions contribute to the formation of acid rain, which in turn impacts both the human and natural environment. Sulfur Dioxide Pollution: Sulfur Dioxide Basics, EPA, https://www.epa.gov/so2-pollution/sulfur-dioxide-basics#effects (last visited June 5, 2025). For example, acid rain damages trees, crops, historic buildings, and monuments, and alters the acidity of both soils and water bodies. Effects of Acid Rain, EPA, https://www.epa.gov/acidrain/effects-acid-rain (last visited June 5, 2025).

23. $SO_x$ can also react with other compounds in the atmosphere to form small particles, which contribute to particulate matter (PM) pollution. Secondary NAAQS for Oxides of Nitrogen and Sulfur, 77 Fed. Reg. at 20,222. PM can penetrate deeply into the lungs and can contribute to health problems and death. *See* Sulfur Dioxide Pollution: Sulfur Dioxide Basics, EPA, https://www.epa.gov/so2-pollution/sulfur-dioxide-basics#effects (last visited June 5, 2025). $SO_x$ also facilitates mercury methylation, which results in a form of mercury that is especially dangerous to humans and wildlife. EPA, Integrated Science Assessment for Oxides of

Nitrogen and Sulfur – Ecological Criteria, Executive Summary at 12 (2008), *available at* https://cfpub.epa.gov/ncea/risk/recordisplay.cfm?deid=201485. $SO_2$ is the pollutant that EPA has used as a surrogate parameter for regulation of all $SO_x$ emissions since first promulgating a NAAQS for $SO_2$ in 1971. *See* Nat'l Primary and Secondary Ambient Air Quality Standards, 36 Fed. Reg. 8,186 (Apr. 30, 1971). Effective August 23, 2010, EPA revised the primary $SO_2$ NAAQS. Primary NAAQS for Sulfur Dioxide, 75 Fed. Reg. at 35,520. EPA estimated that 2,300 to 5,900 premature deaths and 54,000 asthma attacks **a year** will be prevented by the 2010 $SO_2$ NAAQS. EPA, Final Regulatory Impact Analysis for the $SO_2$ NAAQS, at 5-35 (2010), *available at* https://www3.epa.gov/ttn/ecas/docs/ria/naaqs-so2_ria_final_2010-06.pdf. However, these lives can only be saved and adverse health avoided if EPA actually implements the 2010 $SO_2$ NAAQS.

## STATUTORY AND REGULATORY BACKGROUND

24. Congress enacted the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). In so enacting, Congress wanted to "**speed up**, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R. Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S. Code Cong. & Admin. News 5356, 5356 (emphasis added).

25. Central to the Act is the requirement that EPA establish national ambient air quality standards (NAAQS) for certain widespread air pollutants that endanger public health and welfare, referred to as "criteria pollutants." 42 U.S.C. §§ 7408-7409. One criteria pollutant is sulfur dioxide. *See* 40 C.F.R. §§ 50.4, 50.5, 50.17.

26. The NAAQS establish allowable concentrations of criteria pollutants in ambient air, *i.e.* outdoor air.  Primary standards must be stringent enough to protect public health with an adequate margin of safety.  42 U.S.C. § 7409(b)(1).  Secondary standards must be stringent enough to protect public welfare, including, but not limited to, effects on soils, water, vegetation, manmade materials, wildlife, visibility (*i.e.*, haze), climate, damage to property, economic impacts, and effects on personal comfort and well-being.  *Id*. §§ 7409(b)(2), 7602(h).

27. After EPA sets or revises a standard, the Clean Air Act requires EPA to take steps to implement the standard.  Within two years of revising a standard, EPA must "designate" areas as not meeting the standard, known as "nonattainment," or meeting the standard, known as "attainment."  42 U.S.C. § 7407(d)(1)(A)-(B).

28. For each area designated nonattainment, states must develop a plan to attain the NAAQS.  These plans, which must be submitted to EPA, are called State Implementation Plans (SIPs).  *See* 42 U.S.C. §§ 7410(a)(2)(I), 7501 – 7509a, 7514 – 7514a.  SIPs to attain the NAAQS is areas designated as nonattainment are known as nonattainment SIPs.  These nonattainment SIPs include various elements.

29. If a state submits a SIP submittal, EPA must determine if the submittal is administratively complete.  EPA has a mandatory duty to approve or disapprove administratively complete SIP submittals within 12 months of finding the submittal administratively complete.  42 U.S.C. § 7410(k)(2) – (4).

## CLAIM ONE

### (Failure to Approve or Disapprove Nonattainment SIP Submittals by the Statutory Deadline)

30. Plaintiffs incorporate by reference all paragraphs listed above.

31. Tennessee submitted a state implementation plan (SIP) to EPA for the Sullivan County $SO_2$ nonattainment area on February 9, 2023 which included the following elements: Attainment Demonstration, Contingency Measures, Emissions Inventory, Reasonably available control measures/Reasonably available control technology (RACM/RACT), and Reasonable Further Progress (RFP).

32. Because EPA did not determine by August 9, 2023 whether the SIP submittal met the minimum statutory criteria, Tennessee's SIP submittal was "deemed by operation of law" to meet the minimum statutory criteria and thus be administratively complete by no later than August 9, 2023. *See* 42 U.S.C. § 7410(k)(1)(B).

33. As a result, EPA has a mandatory duty to approve or disapprove, either in full or in part, Tennessee's above-listed elements of the SIP submittal by August 9, 2024. *See* 42 U.S.C. § 7410(k)(2)-(4).

34. It has been more than 12 months since the above referenced SIP submittal for Sullivan County was found administratively complete. Yet, EPA has not approved or disapproved, either in full or in part, the above referenced SIP submittal.

35. Therefore, EPA is in violation of its mandatory duty to approve or disapprove, either in full or in part, Tennessee's above-listed elements of the SIP submittal for Sullivan County.

36. Texas submitted SIPs to EPA for the Howard, Hutchinson, and Navarro Counties $SO_2$ nonattainment areas on October 24, 2022 which included the following elements: Attainment Demonstration, Contingency Measures, Emissions Inventory, Reasonably available control

measures/Reasonably available control technology (RACM/RACT), Reasonable Further Progress (RFP), and Nonattainment New Source Review.

37. No later than April 24, 2023, these SIP submittals were determined or "deemed by operation of law" to meet the minimum statutory criteria and thus be administratively complete. *See* 42 U.S.C. § 7410(k)(1)(B).

38. As a result, EPA has a mandatory duty to approve or disapprove, either in full or in part, Texas's above-listed elements of the SIP submittals by April 24, 2024. *See* 42 U.S.C. § 7410(k)(2)-(4).

39. It has been more than 12 months since the above referenced SIP submittals for Howard, Hutchinson, and Navarro Counties were found administratively complete. Yet, EPA has not approved or disapproved, either in full or in part, the above referenced SIP submittals.

40. Therefore, EPA is in violation of its mandatory duty to approve or disapprove, either in full or in part, Texas's above-listed elements of the SIP submittals for Howard, Hutchinson, and Navarro Counties.

41. Arizona submitted a state implementation plan (SIP) to EPA for the Hayden $SO_2$ nonattainment area on October 3, 2023 entitled "Final SIP Revision: 2023 Hayden Sulfur Dioxide Nonattainment Area for the 1971 and 2010 $SO_2$ NAAQS".

42. EPA determined by May 2, 2024 letter that Arizona's submittal is administratively complete.

43. As a result, EPA has a mandatory duty to approve or disapprove, either in full or in part, Arizona's above-listed SIP submittal by May 2, 2025. *See* 42 U.S.C. § 7410(k)(2)-(4).

44. It has been more than 12 months since the above referenced SIP submittal for Hayden was found administratively complete. Yet, EPA has not approved or disapproved, either in full or in part, the above referenced SIP submittal.

45. Therefore, EPA is in violation of its mandatory duty to approve or disapprove, either in full or in part, Arizona's above-listed elements of the SIP submittal for Hayden.

## RELIEF REQUESTED

Plaintiffs respectfully request that the Court:

(A) Declare that the Administrator is in violation of the Clean Air Act with regard to his failure to perform each mandatory duty listed above;

(B) Issue a mandatory injunction requiring the Administrator to perform his mandatory duties by certain dates;

(C) Retain jurisdiction of this matter for purposes of enforcing and effectuating the Court's order;

(D) Grant Plaintiffs their reasonable costs of litigation, including attorneys' and expert fees; and

(E) Grant such further relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Wendy Park
Wendy Park (Cal. Bar No. 237331)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: 510-844-7100 (Ext. 338)
Email: wpark@biologicaldiversity.org

Counsel for Plaintiffs Center for Biological Diversity and Sierra Club

DATED:    August 5, 2025